842 So.2d 527 (2003)
M.A.S.
v.
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES.
No. 2000-CT-00198-SCT.
Supreme Court of Mississippi.
January 2, 2003.
Rehearing Denied April 24, 2003.
*528 Dwayne G. Deer, McComb, attorney for appellant.
Gail D. Nicholson, Austin, TX, attorney for appellee.
EN BANC.

ON WRIT OF CERTIORARI
DIAZ, J., for the Court.
¶ 1. M.A.S. consented to a paternity decree when he was 17 years old. He agreed that he was the father of S.M., and he agreed to pay child support. Approximately nine years later, a DNA test was performed in another matter. M.A.S. was excluded as the biological father of S.M. He therefore sought to set aside the paternity and child support order. The chancellor refused to set aside the previous order, and M.A.S. appealed. His appeal was assigned to the Court of Appeals which affirmed. M.A.S. filed a petition for writ of certiorari which this Court granted.
¶ 2. M.A.S.'s motion pursuant to M.R.C.P. 60(b)(6), which allows relief from a final judgment, should have been granted. M.A.S. has been excluded as the father of the minor child. It is profoundly unjust to require him to continue making child support payments for a child which is known not to be his. The judgments of the Court of Appeals and the chancellor are, therefore, reversed.

FACTS
¶ 3. F.M. became pregnant and gave birth to S.M. in 1990. She alleged that her boyfriend at the time, M.A.S. was the father of the child. The Department of Human Services (DHS) initiated paternity proceedings against M.A.S. No DNA or blood testing was done at that time. M.A.S. was 17 years old. Without counsel or his parents present, he signed a stipulated agreement of paternity in which he agreed that he was the child's father. The Harrison County chancellor entered an order finding M.A.S. to be the child's father and ordering him to pay child support.
¶ 4. M.A.S. later married someone else and had another child. That other child died in 1993 in Lawrence County. The other child's death resulted in a medical malpractice action which was eventually settled for $330,000. In attempting to determine the other child's wrongful death heirs, the Lawrence County chancellor ordered several parties, including S.M., to submit to DNA testing. The testing was done by GeneScreen in 1999. The tests concluded that M.A.S. "is excluded as the biological father of the child [S.M.] because he lacks the genetic markers that must be contributed to the child by the biological father." The probability of paternity was stated at "0.00%."
¶ 5. Relying on the DNA testing which showed that he was not the father of S.M., M.A.S. sought to set aside the previous stipulated paternity order in Harrison County. In applying M.R.C.P. 60(b), the chancellor found that M.A.S. was not entitled to relief because he had waited approximately nine years to contest paternity. She found the delay to be unreasonable given that M.A.S. had expressed doubts about his paternity of the child earlier in the proceedings but had never obtained a blood test. The chancellor also found that res judicata precluded review of the 1990 paternity order.
¶ 6. M.A.S.'s appeal was referred to the Court of Appeals. In a 6-4 decision, the Court of Appeals affirmed the chancellor's refusal to revisit the paternity order. *529 M.A.S. v. Miss. Dep't of Human Servs., 2001 WL 482322 (Miss.Ct.App.2001). M.A.S. filed a petition for writ of certiorari which was granted by the Court.

ANALYSIS
¶ 7. M.A.S. raises two issues in his petition for writ of certiorari:
I. WHETHER THE DECISION OF THE COURT OF APPEALS IS IN CONFLICT WITH RAFFERTY V. PERKINS, 757 So.2d 992 (Miss.2000).
II. WHETHER THE DECISION OF THE COURT OF APPEALS INVOLVES FUNDAMENTAL ISSUES OF BROAD IMPORTANCE.
¶ 8. The two claims are related and are considered jointly. In Rafferty, a child had been born during the marriage of the parties. They later divorced. The mother (Rafferty) later alleged that her ex-husband (Perkins) was not the father of the child and that a third party was in fact the biological father. Perkins maintained that he was the father. DNA testing concluded by a probability of 99.94% that the third party (Easter) was in fact the child's father. The DNA testing excluded Perkins as the father of the child. Despite the DNA results, the jury found that the presumption that a child born during a marriage is the husband's child had not been overcome. The jury found Perkins to be the father. On appeal, this Court reversed and rendered that finding and concluded that Easter was in fact the child's biological father.
¶ 9. Rafferty is of limited applicability here. In that case, this Court did uphold the validity of DNA testing and found based on that a verdict inconsistent with that testing had to be reversed and rendered. However, in Rafferty, there was no previous order adjudicating paternity. There was no issue pertaining to res judicata or collateral estoppel. The issue there was the initial determination of the child's paternity. Here, there was an order in 1990 which established that M.A.S. is the father of this child.
¶ 10. Generally, collateral estoppel "precludes parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity." State ex rel. Moore v. Molpus, 578 So.2d 624, 640 (Miss.1991). The questions here involve an attempt to dissolve the 1990 order by way of M.R.C.P. 60 or some other means.
¶ 11. M.R.C.P. 60(b) provides:
(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.
The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken.
*530 ¶ 12. A trial judge's refusal to grant relief under Rule 60(b) is subject to review under an abuse of discretion standard. Telephone Man, Inc. v. Hinds County, 791 So.2d 208, 210 (Miss.2001); Moore v. Jacobs, 752 So.2d 1013, 1015 (Miss.1999). This Court has stated that "[r]elief under Rule 60(b)(6) is reserved for extraordinary and compelling circumstances," and that the Rule is a "grand reservoir of equitable power to do justice in a particular case." Briney v. United States Fid. & Guar. Co., 714 So.2d 962, 966 (Miss.1998). But "Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies." City of Jackson v. Jackson Oaks Ltd. P'ship, 792 So.2d 983, 986 (Miss.2001). "Further, Rule 60(b) motions should be denied where they are merely an attempt to relitigate the case." Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984).
¶ 13. The chancellor found that the motion had not been brought within a reasonable time. The paternity order was entered in 1990. The DNA testing was completed on April 20, 1999. The motion to set aside the previous order was filed two and a half months later. The chancellor found that M.A.S. could have requested DNA testing during that nine year period. M.A.S. testified that he did ask for blood tests but that DHS officials refused his request.
¶ 14. In Briney v. United States Fidelity & Guaranty Co., 714 So.2d 962, 966-67 (Miss.1998), this Court discussed what is a reasonable time under Rule 60. The Court there cited language in Heirs-at-Law & Beneficiaries of Gilbert v. Dresser Industries, Inc., 158 F.R.D. 89, 96 (N.D.Miss.1993):
What constitutes reasonable time must of necessity depend upon the facts in each individual case. The Courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party has some good reason for his failure to take appropriate action sooner.
(quoting 11 Wright & Miller, Federal Practice & Procedure 2866).
¶ 15. DHS and the mother have not been prejudiced by the failure to seek relief sooner. The mother received child support payments for approximately ten years from the wrong person. M.A.S. testified that he requested a blood test but that the DHS refused to provide one. He also claimed that he was unable to afford his own blood test. Under the special circumstances here, the motion was filed within a reasonable time. Shortly after it became known through the DNA test that he was not the child's father, M.A.S. filed an appropriate motion to set aside the paternity and child support order.
¶ 16. Briney also cited the following criteria for determining Rule 60(b) motions:
(1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [relevant only to default judgments]; (6) whether if the judgment was rendered after a trial on the merits-the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.
Briney, 714 So.2d at 968 (citing Batts v. Tow-Motor Forklift Co., 153 F.R.D. 103, 109 (N.D.Miss.1994) quoting Seven Elves, *531 Inc. v. Eskenazi, 635 F.2d 396, 402 (5th Cir.1981)).
¶ 17. Consideration of a Rule 60(b) motion does require that a "balance ... be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality." Lose v. Ill. Cent. Gulf R.R., 584 So.2d 1284, 1286 (Miss.1991) (quoting Stringfellow, 451 So.2d at 221). In our opinion, finality should yield to fairness here. M.A.S. has paid child support for someone else's child for over ten years. He will be obligated to support that child for many more years unless the flawed paternity and child support order is vacated. The chancellor's refusal to withdraw the paternity order in the face of unrefuted proof that M.A.S. is not the child's father, was an abuse of discretion.
¶ 18. In our opinion, this case is the archetype for the application of Rule 60(b)(6). We now know beyond any reasonable doubt that the 1990 paternity order was incorrect.[1] The child is not that of M.A.S. The question is what can or should be done about the paternity order. In our opinion, substantial justice required granting relief under the rule. The Court of Appeals' affirmance on that issue must be reversed.

CONCLUSION
¶ 19. Through DNA testing, we now know beyond a reasonable doubt that M.A.S. is not the child's father and that the previous paternity and child support order is incorrect. This is a special situation in which relief is justified under M.R.C.P. 60(b)(6). A manifest injustice will result if M.A.S. is required to continue making child support payments for a child which unquestionably is not his. Therefore, we reverse the judgment of the Court of Appeals and the order of the Harrison County Chancery Court denying M.A.S. relief from the paternity and child support order, and we remand this case to the chancery court with directions that it grant M.A.S. relief from the paternity and child support order in accordance with this opinion and M.R.C.P. 60(b).
¶ 20. REVERSED AND REMANDED.
SMITH, P.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. PITTMAN, C.J., AND McRAE, P.J., CONCUR IN RESULT ONLY.
NOTES
[1] DNA testing is not necessarily determinative. Chisolm v. Eakes, 573 So.2d 764, 767 (Miss.1990) (blood tests are not necessarily conclusive). Here, DHS and the mother do not claim that M.A.S. might still be the father despite the DNA tests. They only claim that the 1990 order should not be terminated.