ISHEE, J.,
for the Court:
¶ 1. Bee and Birdie White owned property in Calhoun County, Mississippi (the property). Upon their deaths, the property was divided into seven equal parts among their seven surviving children. Six of the children conveyed their interests in the property to their brother while reserving unto themselves a life estate. After their brother’s death, the six siblings contested their conveyance of the property in the Calhoun County Chancery Court. However, before a trial took place, the six siblings entered into a stipulation that resulted in an agreed order admitting the conveyance was proper. Three years later they contested the agreed order, claiming it was a mistake. The chancery court denied their request for relief by order, which is the subject of the instant appeal. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Upon the deaths of their parents, Hazel Cade, Lig White, Willie May Dowdy, Bessie Turner, Julia White, Shirley Moore (the siblings), and Sonny White inherited equal shares of the property located in Calhoun County. In 2000, the siblings conveyed their interests in the property through a warranty deed to their brother, Sonny, while reserving life estates for themselves.
¶ 3. Sonny died six years later, and the property passed to his wife, Bessie, and his children. Shortly after Sonny’s death, the siblings retained counsel in June 2006 and filed a petition in the chancery court requesting relief from their conveyance of the property to Sonny. According to the siblings, their intentions in executing the warranty deed was to surrender Sonny’s interest in the property to them and reserve him a life estate. They claimed the *293 deed was erroneously drafted and, therefore, unintentionally executed by them.
¶ 4. The case was set for trial with all parties represented by counsel. However, in 2007, counsel for all parties entered into a stipulation which resulted in an agreed order establishing that the warranty deed in question properly conveyed the property to Sonny while reserving life estates for the siblings with each sibling retaining the right to occupy the property during then-lives with remainder interests vested in Sonny’s heirs. The chancery court entered the agreed order in April 2007.
¶ 5. The siblings received a copy of the agreed order in the mail in April 2007. Upon receipt, the siblings wrote, “REJECTED BY ALL 6 INHERITANCES [sic] OF BEE WHITE,” and returned it to their attorney, asking him why they were no longer scheduled to appear in court. The attorney again explained the contents of the agreed order and its effects. According to one sibling, their understanding of the order was that “[the property] was ours until we died and then it would go to [Sonny’s wife and children.]” On May 6, 2007, one of the siblings wrote the attorney on behalf of all siblings stating they no longer wished to employ his services and were paying his final bill in full.
¶ 6. In the summer of 2009, the siblings were contacted by an individual interested in purchasing the property. The siblings agreed to sell the property without including Sonny’s heirs in the negotiations or the profits. However, the purchaser soon discovered the property was not the siblings’ to sell, and sale negotiations were terminated.
¶7. A year later, in August 2010, the siblings filed a motion in the chancery court seeking to have the agreed order set aside. The siblings argued that then-counsel was not authorized to sign the agreed order on their behalf and that they did not agree with the terms of the order. After a hearing on the merits, the chancery court denied the siblings’ request for relief from the agreed order. The siblings now appeal claiming the chancery court erred in refusing to negate the agreed order; the chancery court erred in finding the siblings’ attorney had apparent and actual authority to enter them into the agreed order; and the chancery court erred in its determination that equity and justice did not justify negation of the agreed order. We affirm the chancery court’s judgment.
DISCUSSION
¶ 8. We recognize our limitations in reviewing a chancellor’s decision. Howard v. Gunnell, 63 So.3d 589, 597 (¶ 16) (Miss.Ct.App.2011). “We acknowledge that this Court will not disturb a decision of a chancellor absent a finding that he or she is manifestly wrong, clearly erroneous, or the chancellor applied an erroneous legal standard.” Id. (citation and quotation omitted). Nonetheless, we review questions of law de novo. Rousseau v. Rousseau, 910 So.2d 1214, 1217 (118) (Miss.Ct.App.2005) (citations omitted).
¶ 9. Here, the siblings argue Mississippi Rule of Civil Procedure 60(b) warrants the setting aside of the agreed order. Rule 60(b) provides for relief of a party from a final judgment under the following conditions:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judg *294 ment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.
Rule 60(b) further states a motion to set aside a final judgment under one of the applicable conditions must be made “within a reasonable time and for reasons (1), (2)[,j and (3) not more than six months after the judgment, order, or proceeding was entered or taken.” Id.
¶ 10. We have recognized that Rule 60(b) “provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances, and neither ignorance nor carelessness on the part of an attorney will provide grounds for relief.” Jenkins v. Jenkins, 757 So.2d 339, 343 (¶ 7) (Miss.Ct. App.2000) (quoting Stringfellow v. String-fellow, 451 So.2d 219, 220 (Miss.1984)). Furthermore, “[a] party is not entitled to relief merely because he is unhappy with the judgment, but he must make some showing that he was justified in failing to avoid mistake or inadvertence; gross negligence, ignorance of the rules, or ignorance of the law is not enough.” Id.
¶ 11. The siblings argue subsections four and six of Rule 60(b) apply to their case because they allegedly never authorized their counsel to enter into the agreed order on their behalf. Furthermore, while they acknowledge they were well aware that the order had been entered in April 2007, they nonetheless failed to attempt reversal of the order until the instant action was filed more than three years later. The chancery court held:
[Tjhis court finds that the attorney had the apparent and actual authority to act on behalf of his client. The client, in this case[, the siblings, are] bound by the actions of [their] attorney. Further, [the siblings] had actual notice of the accident or mistake and did nothing to correct such an accident or mistake until now. Additionally, the parties are entitled to rely on entry of decrees of this court and public record.... In the case before the court today, [the siblings] waited three years to file this motion. The court finds that the time for appeal has expired. [The siblings] had ample opportunity to file a motion to set aside the Agreed Order and [have] failed to do so in a timely manner.
¶ 12. The siblings rely on several cases to support their theory that Rule 60(b) permits negation of the agreed order. In particular, the siblings cite the case of M.A.S. v. Mississippi Department of Human Services., 842 So.2d 527 (Miss.2003), for the proposition that Rule 60(b)’s time limitation is a fluid limitation depending upon the facts of each case. In so doing, the siblings note the Mississippi Supreme Court’s allowance of a nine-year time lapse in a reversal of a final judgment under Rule 60(b). However, the siblings failed to address the factual differences between M.A.S. and the instant case.
¶ 13. M.A.S. involved the entry of a previously-stipulated paternity order, which had been previously agreed to, that was signed by a mother and her former boyfriend, both of whom were minors. Id. at 528 (¶ 1). The former boyfriend was also unrepresented at the time he signed the stipulated order acknowledging him as the child’s father. Id. at 528 (¶ 3). Nine years later, the former boyfriend presented evidence that the Mississippi Department of Human Services had repeatedly refused to provide a paternity test. Id. at 530 (¶ 13). The former boyfriend provided DNA evidence from an unrelated matter proving he was not the child’s father. Id. at 528 (¶ 5). The former boyfriend requested the chancery court negate the *295 stipulated paternity order so that he could stop paying child support. Id. at 528 (¶ 1). The chancery court refused, and the former boyfriend appealed. Id. On appeal, the supreme court allowed for reversal of the stipulated paternity order under Rule 60(b) despite the nine year time lapse. Id. at 528 (¶ 2). In doing so, the supreme court recognized the extreme circumstances of the case in that the former boyfriend was both a minor and unrepresented at the time the stipulated paternity order was signed. Id. at 581 (¶ 19). The supreme court also noted the irrefutable nature of the newly discovered DNA evidence as well as the prejudicial nature of the former boyfriend paying almost a decade of child support for a child that was not his. Id.
¶ 14. The facts of the instant case are markedly different. The parties were of age and represented by counsel in all proceedings. Furthermore, there is no irrefutable evidence that the siblings expressly refused to agree to the order in question. Indeed, there was the appearance of authority between the siblings and their attorney. The record indicates the siblings discussed the matter with their counsel and then paid him for his services. It was not until three years after the agreed order was entered and the siblings discussed the order with their attorney that they ultimately sought to have the order set aside.
¶ 15. The siblings also claim they would be prejudiced by the Court’s failure to reverse the agreed order based on the “spirit of justice” since the property in question “holds a unique and special place in the American psyche” and for the siblings. However, the siblings only fought to reclaim their interest in the property for which they claim to hold such sentimental value after they attempted to sell it without any notice or profit to Sonny’s heirs. Only after the attempted sale did they move to reverse the agreed order and claim an irreplaceable loss in the divesting of their family’s land to their brother’s heirs.
¶ 16. As such, we agree with the chancellor’s decision. We find that there are no exceptional circumstances warranting the negation of the agreed order under Rule 60(b). Accordingly, these issues are without merit.
¶ 17. THE JUDGMENT OF THE CALHOUN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ„ BARNES, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. ROBERTS, J„ NOT PARTICIPATING.