ROBERTS, J.,
for the Court:
¶ 1. Kenyader Weatherspoon voluntarily acknowledged that he was the father of Serhonda Brown’s child, M.B.[1] Weather-spoon also agreed to pay Brown child support. Approximately six years later, a DNA test revealed that Weatherspoon was not M.B.’s biological father. Weatherspoon successfully moved to set aside the order of filiation and relieve him of his obligation to pay future and past but unpaid child support. The Madison County Chancery Court also ordered Brown to pay Weather-spoon’s attorney’s fees.
¶ 2. Brown appeals and raises three issues. Brown claims the chancellor erred when she granted Weatherspoon’s motion to set aside the order of filiation. Additionally, Brown claims the chancellor erred when she relieved Weatherspoon of his obligation to pay accrued, unpaid child support. Finally, Brown claims the chancellor erred when she ordered Brown to pay Weatherspoon’s attorney’s fees. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. M.B. was born in January 2001. Brown told the Mississippi Department of Human Services (DHS) that she believed Weatherspoon was M.B.’s father. In 2002, Brown sued Weatherspoon to establish paternity and receive child support. Brown also named DHS a defendant in that lawsuit based on her claim that she had received or would receive benefits for M.B. under the Aid to Families with Dependent Children or Temporary Assistance for Needy Families programs. Without requesting DNA tests, Weatherspoon voluntarily signed an order of filiation and agreed to pay $157 each month in child support. Weatherspoon also received visitation rights with M.B. In December 2005, Weatherspoon entered an agreed judgment of contempt based on some unpaid child support. Weatherspoon’s child-support obligation was increased to $207 per month to make up the difference.
¶ 4. In March 2008, Brown agreed to DNA testing to determine whether M.B. was actually Weatherspoon’s child. The DNA test results indicated that there was a 0% probability that Weatherspoon was M.B.’s father. Approximately five months later, Weatherspoon filed a motion to set aside the paternity and child support order under Rule 60(b)(6) of the Mississippi Rules of Civil Procedure. Brown contested Weatherspoon’s motion and filed a counterclaim for contempt for unpaid child support. Initially, Brown disputed the DNA test results. However, she later stipulated that the DNA test results were correct.
¶ 5. The chancellor heard Brown’s motion and Weatherspoon’s counterclaim for contempt over the course of three separate hearing dates. On June 8, 2011, the chancellor entered her opinion and order. The chancellor granted Weatherspoon’s motion to set aside the paternity and child support order. According to the chancellor, since M.B. was not Weatherspoon’s biological child, it would be unjust for Weatherspoon to continue to pay child support for M.B.
¶ 6. The chancellor also addressed Brown’s argument that Weatherspoon should be held in contempt and remain responsible for the unpaid child support that accrued between the time that Weath-erspoon acknowledged paternity and vol *176 unteered to pay child support and the chancellor’s decision to grant Weather-spoon’s motion. The chancellor cited McBride v. Jones, 803 So.2d 1168 (Miss.2002) for the principle that past-due child support payments cannot be modified or forgiven because the parent’s obligation of child support vests in the child when the payment becomes due. The chancellor held that she had no authority to forgive the vested, past-due child support. However, relying on R.E. v. C.E.W., 752 So.2d 1019 (Miss.1999), the chancellor went on to hold that M.B.’s actual biological father should be responsible for the past-due amount.[2] Consequently, the chancellor ordered “the parties, their attorneys, and [DHS] to determine the past[-]due amount of child support.” The chancellor also ordered Brown “to file a separate suit against the biological father to establish paternity, and to be appointed general guardian of [M.B.].” According to the chancellor, “[t]he biological father shall be ordered to pay the determined sum of past[-]due child support to the guardian for [M.B.], within forty-five ... days of the entry of this Opinion and Order.”
¶ 7. The chancellor found that putative biological father, Greg Adams, had been named as a party and served with process.[3] The chancellor noted that DHS’s accounting indicated that Weatherspoon owed Brown $7,893.82 in unpaid child support from April 2006 through December 2009. The chancellor further noted that Brown acknowledged that Weatherspoon had given her some money during that time, but Brown was not certain how much money Weatherspoon had given her. Accordingly, the chancellor did not accept DHS’s accounting as authoritative. According to the chancellor, Brown did not want to seek child support from the putative biological father. Brown apparently never elaborated on her reasoning.
¶ 8. Finally, the chancellor addressed Weatherspoon’s request for attorney’s fees. The chancellor stated:
In spite of the negative DNA results, [Brown] has insisted [that] [Weather-spoon] pay her past[-]due child support and current child support for [M.B.]. She has filed a response to the motion to set aside, and a counterclaim for contempt, after she received the DNA results. [Brown] testified that she knows the identity of the biological father and his whereabouts. She further stated she does not intend to pursue child support from the biological father. [Brown] stated she only wants child support from [Weatherspoon], As a result, [Weather-spoon] stated he has incurred attorney’s fees in the amount of $9,210.25 since the institution of the suit in August 2008.
As a consequence of her insistence that [Weatherspoon] pay child support for a child that is unquestionably not his, this Court hereby awards attorney[’]s fees to [Weatherspoon] in the amount of $9,120.25 [sic]. The said attorney[’s] fees are to be paid by [Brown] within 90 days of the entry of this Opinion and Order.
Brown appeals.
STANDARD OF REVIEW
¶ 9. “When reviewing a chancellor’s decision, an appellate court will accept *177 the chancellor’s findings of fact as long as the evidence in the record reasonably supports those findings.” Lee v. Lee, 12 So.3d 548, 550 (¶ 9) (Miss.Ct.App.2009). (quoting Norton v. Norton, 742 So.2d 126, 128-29 (¶ 8) (Miss.1999)). We will disturb the chancellor’s findings if the chancellor was manifestly wrong; the chancellor’s findings are not supported by substantial, credible evidence; or the chancellor applied an erroneous legal standard. Id.
ANALYSIS
I. WEATHERSPOON’S RULE 60(B) MOTION
¶ 10. Brown claims the chancellor erred when she granted Weatherspoon’s Rule 60(b) motion to set aside the 2002 order of filiation. According to Brown, Weatherspoon did not file his motion within a reasonable time. Brown also argues that Weatherspoon should be estopped from setting aside the paternity and child support order because Weatherspoon voluntarily agreed to execute it. Brown claims Weatherspoon could have contested custody when M.B. was born, but he chose not to do so.
¶ 11. “A trial judge’s refusal to grant relief under Rule 60(b) is subject to review under an abuse of discretion standard.” M.A.S. v. Miss. Dept. of Human Serv., 842 So.2d 527, 530 (1112) (Miss.2003) (citations omitted). Rule 60(b) provides:
(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.
The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceedings was entered or taken.
¶ 12. The chancellor granted Weatherspoon’s motion under Rule 60(b)(6). “Relief under Rule 60(b)(6) is reserved for extraordinary and compelling circumstances.” Id. at 530 (¶ 12). Rule 60(b)(6) has also been described as “grand reservoir of equitable power to do justice in a particular case.” Id. But it “is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies.” Id.
¶ 13. In M.A.S., a man had consented to paternity of a child, but through DNA testing he later learned that he was not the child’s biological father. M.A.S., 842 So.2d at 528 (¶ 1). M.A.S. successfully moved to set aside the prior order of filiation. Id. at 529 (¶ 5). The Mississippi Supreme Court affirmed the decision to set aside an order of filiation and stated that M.A.S. was “the archetype for the application of Rule 60(b)(6).” Id. at (¶ 18). Despite the fact that the movant in M.A.S. had paid child support for ten years, the supreme court held that he had filed his Rule 60(b) motion within a reasonable time *178 after he learned that he was not the child’s father. Id. at 530 (¶ 15). Brown notes that the movant in M.A.S. was seventeen years old when he signed a stipulated paternity agreement. Id. at 528 (¶ 8). Brown argues that this case is distinguished from MAR. because Weather-spoon was twenty-four when he signed the stipulated paternity agreement. But the M.A.S. court did not base any part of its rationale on the movant’s age.
¶ 14. Brown also claims Weather-spoon’s motion was untimely. A Rule 60(b)(6) motion is timely if it is filed “within a reasonable time.” M.R.C.P. 60(b)(6). “What constitutes reasonable time must of necessity depend upon the facts in each individual case.” M.A.S., 842 So.2d at 530 (¶ 14) (citation omitted). Relevant factors include whether the movant’s delay prejudiced the nonmoving party and whether there is a good reason for the movant’s delay. Id. According to Brown, Weather-spoon’s Rule 60(b)(6) motion was untimely because he filed it more than six years after he signed the stipulated paternity order. But the supreme court has held that the movant in M.A.S. timely filed his Rule 60(b)(6) motion even though he did so approximately nine years after he signed a stipulated paternity order. Id. at (¶ 13).
¶ 15. Weatherspoon did not definitively learn that M.B. was not his child until shortly after DNA testing was completed on March 19, 2008. The record does not indicate that Weatherspoon had earlier opportunities to seek DNA testing. He filed his Rule 60(b)(6) motion approximately five months later. Under the circumstances, the chancellor did not abuse her discretion when she implicitly found good cause for Weatherspoon’s delay. Moreover, Brown was not prejudiced by Weatherspoon’s delay. Although he had accrued unpaid child support, Weatherspoon paid Brown a significant amount of child support for a child who was not his.
¶ 16. “Consideration of a Rule 60(b) motion does require that a balance be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality.” M.A.S., 842 So.2d at 531 (¶ 17) (citation and internal quotation omitted). Weatherspoon has been obligated to pay and has paid child support for someone else’s child. As the supreme court stated in M.A.S., “finality should yield to fairness here.” Id. Following M.A.S., we find that the chancellor did not abuse her discretion when she granted Weatherspoon’s Rule 60(b) motion. There is no merit to this issue.
II. PAST-DUE CHILD SUPPORT
¶ 17. Next, Brown argues that the chancellor erred when she did not order Weatherspoon to pay past-due child support that accrued after Weatherspoon signed the stipulated paternity agreement. Brown reasons that regardless of the DNA testing, Weatherspoon should have to pay the past-due child support that accrued before the chancellor set aside the stipulated paternity agreement. Brown also claims the chancellor had no authority to order M.B.’s biological father to pay child support because it is uncertain whether he actually is M.B.’s father and he was not a party to the underlying litigation. Finally, Brown argues that the chancellor’s decision has the effect of limiting the past-due child support that M.B. can recover because the Mississippi Uniform Law of Paternity limits a biological father’s child-support obligation to “a period of one ... year next preceding the commencement of an action.” Miss.Code Ann. § 93-9-11 (Rev.2004).
¶ 18. Brown indicated that she knew the name and whereabouts of the man she believed to be M.B.’s biological father. *179 However, Brown said she does not intend to seek child support from him. He was not joined as a necessary party to the underlying litigation. The record does not indicate that he was ever served with a summons. The chancellor did not appoint a guardian ad litem to represent M.B.’s interests. However, the myriad effects of these procedural matters are not before us in this appeal.
¶ 19. Additionally, the chancellor was not able to determine the exact amount of unpaid child support that had accrued while Weatherspoon was legally considered M.B.’s father. When Brown filed her counterclaim, she claimed that Weather-spoon owed her approximately $5,900 in unpaid child support. However, she later admitted that Weatherspoon had given her additional money, although she did not know how much he had given her. On April 26, 2011, DHS represented that Weatherspoon owed Brown $7,893.32 in unpaid child support that accrued from April 2006 through December 2009. As a result of that uncertainty, the chancellor ordered Brown and DHS to calculate the precise amount of unpaid child support and then held that M.B.’s biological father was obligated to pay it.[4]
¶ 20. It is well settled that “court-ordered child-support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid.” Smith v. Smith, 20 So.3d 670, 674 (¶ 13) (Miss.2009). However, the Mississippi Legislature has provided chancellors with limited authority to relieve a child-support obligation, including any arrearage, upon disestablishment of paternity. Miss.Code Ann. § 93-11-71(4) (Rev.2007). At the time the chancellor relieved Weather-spoon’s child-support obligation,[5] section 93-11-71(4) (Rev.2007) provided:
[Ujpon a motion filed by the obligor and a finding of clear and convincing evidence including negative DNA testing that the obligor is not the biological father of the child ... for whom support has been ordered, the court shall disestablish paternity and may forgive any child support arrears of the obligor for the child ... determined by the court not to be the biological child ... of the obligor, if the court makes a written finding that, based on the totality of the circumstances, the forgiveness of the arrears is equitable under the circumstances.
Weatherspoon submitted a DNA test that conclusively demonstrated that he was not M.B.’s father. The chancellor clearly had the discretion to forgive Weatherspoon’s child-support arrearage. We do not find that the chancellor abused her discretion.
III. ATTORNEYS FEES
¶ 21. Brown claims the chancellor erred when she awarded Weatherspoon $9,210.25 in attorney’s fees. The chancel *180 lor based her decision on the following discussion:
In spite of the ... DNA results, [Brown] has insisted [that] [Weather-spoon] pay her past[-] due child support and current child support for [M.B.]. [Brown] ... filed a response to [Weath-erspoon’s Rule 60(b) ] motion ... and a counterclaim for contempt ... after she received the DNA results. [Brown] testified that she knows the identity of the biological father and his whereabouts. She further stated she does not intend to pursue child support from the biological father. [Brown] stated she only wants child support from [Weather-spoon]. As a result, [Weatherspoon] stated he has incurred attorney’s fees in the amount of $9,210.25 since the institution of the suit in August 2008.
As a consequence of [Brown’s] insistence that [Weatherspoon] pay child support for a child that is unquestionably not his, this Court hereby awards attorney[’]s fees to [Weatherspoon] in the amount of $9,120.25 [sic].
Brown argues that she should not have to pay Weatherspoon’s attorney’s fees because she had the right to defend herself against Weatherspoon’s Rule 60(b) motion. Brown also argues that Weatherspoon would have incurred his fees regardless of whether she had counterclaimed for contempt. According to Brown, the chancellor further erred in that there was no evidence of Weatherspoon’s inability to pay his attorney’s fees. Finally, Brown claims the chancellor erred because she did not weigh the factors discussed in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982).
¶ 22. The award of attorney’s fees is generally left to the discretion of the chancellor. Arthur v. Arthur, 691 So.2d 997, 1004 (Miss.1997) (citations omitted). “We are reluctant to disturb a chancellor’s discretionary determination whether or not to award attorney[’s] fees and of the amount of any award.” Id. (citation and internal quotation omitted). The chancellor based her decision to award Weatherspoon attorney’s fees on Brown’s vigorous insistence that Weatherspoon pay child support when, based on the DNA test results, Brown knew Weatherspoon was not M.B.’s father. The chancellor also noted that Brown knew the identity and whereabouts of the man she believes to be M.B.’s biological father, but she chose not to pursue paternity testing or child support from him. In her order, the chancellor referenced the fact that when Brown was asked why she had not sought child support from M.B.’s biological father, Brown responded that “she just did not want to.”[6]
¶ 23. Furthermore, in McKee, the supreme court held that an award of attorney’s fees based on an estimated 850 hours worked on the case was too speculative to support the award. McKee, 418 So.2d at 766-67. But when a chancellor bases an award of attorney’s fees on an itemized bill, there is substantial evidence to support the chancellor’s award. Dobbins v. Coleman, 930 So.2d 1246, 1252 (¶ 27) (Miss.2006). Weatherspoon submitted itemized bills from his attorney. The chancellor based her award on those itemized bills. Consequently, we do not find that the chancellor abused her discretion.
¶ 24. Weatherspoon requests attorney’s fees on appeal. “Ordinarily, under our rule, an award of one-half of the sum granted by the trial court is deemed appropriate on appeal.” McKee, 418 So.2d at 767. Therefore, we award Weather- *181 spoon additional attorney’s fees in the amount of $4,605.13.
¶ 25. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. We use initials to protect the child's identity-

. Brown believed that she knew the identity and the whereabouts of the man she believed to be M.B.’s biological father. However, she indicated that she was not interested in pursuing child support from him. As of the chancellor’s opinion and order, M.B.’s paternity was unconfirmed.

. The record is inconsistent with the chancellor’s conclusion. There is no indication that M.B.’s putative biological father had been served with process, filed any pleadings, or that he had made a voluntary appearance in the litigation.

. Although the chancellor based her decision on the supreme court’s reasoning in R.E., 752 So.2d at 1025-27, the biological father in that case was a party to the litigation.

. We note that Weatherspoon signed a voluntary order of filiation. Effective July 1, 2011, "a court shall not set aside the paternity determination or child support order if the legal father ... [sjigned a stipulated agreement of paternity that has been approved by order of the court." Miss.Code Ann. § 93 — 9—10(3)(c) (Supp.2012). Furthermore, Weatherspoon signed the voluntary order of filiation without requesting a DNA test to determine whether M.B. was his child. As of July 1, 2011, section 93-9-10(3)(e) prevents a court from setting aside a paternity determination or child support order if the legal father had “[b]een named as the legal father or ordered to pay support by valid order of the court after having declined genetic testing." Because the chancellor entered her judgment on June 8, 2011, she did not apply the amended portions of section 93-9-10(3).

. The statement that the chancellor attributed to Brown does not appear in the transcript. However, Brown does not dispute the accuracy of the chancellor’s statement.