MAXWELL, JUSTICE, FOR THE COURT:
 

 ¶ 1. The husband in this case divorced his wife and entered into a property-settlement agreement that strongly favored his wife and child. The chancellor approved and adopted the agreement and incorporated it as part of the final divorce judgment. After abiding by the judgment's terms for two years, the husband asked the court to set it aside or modify it. As grounds, he alleged duress and his wife's supposed coercive misconduct in their negotiating of what he now deems an unconscionable settlement. The chancellor denied the husband's request, finding he simply had waited too long to challenge the judgment. We agree.
 

 ¶ 2. When a party to a previously entered settlement agreement incorporated into a divorce judgment seeks to set it aside based on an adverse party's alleged misconduct, Mississippi Rule of Civil Procedure 60(b)(1) mandates he or she do so within six months. And the husband's attempt to escape the agreement was filed more than two years too late. To the extent he sought relief from the already-entered judgment for some reason other than his wife's supposed misconduct, the chancellor found his request was not filed within a "reasonable time" under Rule 60(b)(6).
 

 ¶ 3. We find the chancellor properly applied the law. And his decisions about the tardiness of Carl Smith's motion and his alternative finding that the agreement was not unconscionable are substantially supported. Because the chancellor did not abuse his discretion, we affirm.
 
 [1]
 

 Background Facts and Procedural History
 

 ¶ 4. Carl Smith and Lisa Doe divorced in February 2010.
 
 [2]
 
 The divorce decree incorporated a property-settlement agreement that was very favorable to Lisa. Carl acknowledged the lopsided nature of the settlement agreement. He understood he was assuming more debt and higher alimony and child-support payments than ordinarily required. The signed agreement memorializes this understanding and why Carl was amenable to it. One of the very first provisions in the settlement agreement says:
 

 WHEREAS
 
 , Husband recognizes and acknowledges that the provisions ... and obligations undertaken by him regarding [child support], as well as the division of marital property and debt and the obligation undertaken by him to pay alimony, are ... more burdensome upon him for alimony and child support and division of marital property and debt than a court would ordinarily impose. Nevertheless, Husband is both willing to limit and restrict his rights ... and expand his obligations regarding child support, alimony, and division of marital property and debt as contained in this agreement ... These limitations and restrictions of rights and expansion of obligations are based, in part, by both Husband and Wife's mutual understanding of the unique difficulties in which Husband's behavior has placed the family unit ....
 

 The "unique difficulties" on the family stemmed from Carl's salacious interactions and extramarital affairs with known and anonymous same-sex partners, lying about how he had contracted HIV, and allegations of his pedophilic activities.
 
 [3]
 
 Because of his tremendous guilt and shame for the devastation he caused his family, Carl was amenable to the heightened obligations. He abided by the February 17, 2010 judgment, making all payments for more than two and a half years. But in October 2012, he tried to back out of it.
 

 ¶ 5. Carl filed a complaint to set aside, or alternatively modify, the settlement agreement. He did not claim a material change in circumstances or lack of financial ability to abide by the agreement. Rather, for the first time, he urged the agreement was the product of coercion and duress and was procedurally and substantively unconscionable. He suggested his wife had strong-armed him, threatening to disclose his affairs, disease, and alleged malfeasance if he did not sign the agreement. And he signed the agreement under duress, facing "financial ruin, humiliation, loss of his medical license, criminal prosecution, and loss of contact" with his daughter. Carl also claims Lisa would not permit him to have an attorney review the agreement's terms.
 

 ¶ 6. Lisa disagreed with much of Carl's version. She admits she was angry and behaved harshly toward Carl after she had unearthed much of his hidden second life and illicit activities. But she maintained his coercion and duress allegations are not only false but are undermined by his express acknowledgments in the property-settlement agreement.
 

 ¶ 7. The chancellor granted Carl a hearing on his motion. And after five days of testimony and argument, he held Carl's attempt to set aside the settlement agreement was untimely under both Rule 60(b)(1) and 60(b)(6). He also found that, even if Carl's request had been prompt, the agreement was not unconscionable. Carl has now appealed to this Court.
 
 [4]
 
 On appeal, he argues the chancellor erred by (1) not finding his complaint timely and (2) not finding the settlement agreement substantively and procedurally unconscionable.
 

 Discussion
 

 ¶ 8. We review the grant or denial of a Rule 60(b) motion for abuse of discretion.
 
 Finch v. Finch
 
 ,
 
 137 So.3d 227
 
 , 232 (Miss. 2014) (citing
 
 Stringfellow v. Stringfellow
 
 ,
 
 451 So.2d 219
 
 , 221 (Miss. 1984) ). When reviewing a decision for abuse of discretion, "we ask first if the court below applied the correct legal standard."
 
 Burkett v. Burkett
 
 ,
 
 537 So.2d 443
 
 , 446 (Miss. 1989) (citing
 
 Detroit Marine Eng'g v. McRee
 
 ,
 
 510 So.2d 462
 
 , 467 (Miss.1987) ;
 
 Croenne v. Irby
 
 ,
 
 492 So.2d 1291
 
 , 1293 (Miss.1986) ). "If so, we then consider whether the decision was one of those several reasonable ones which could have been made."
 

 Id.
 

 I. Timeliness
 

 ¶ 9. Carl argues he signed the settlement agreement only because Lisa threatened to reveal his affairs and inappropriate behavior and activities. He insists Lisa's coercive misconduct and the agreement's favoring of Lisa warrant setting it aside.
 

 A. Rule 60(b)(1)
 

 ¶ 10. " Rule 60(b)(1) deals with relief from judgment obtained by fraud, misrepresentation, or
 
 other misconduct of the adverse party.
 
 "
 
 Stringfellow
 
 ,
 
 451 So.2d at 221
 
 (emphasis added). To obtain Rule 60(b)(1) relief from a final judgment, motion "shall be made ...
 
 not more than six months after the judgment
 
 , order, or proceeding was entered or taken." M.R.C.P. 60(b)(1) (emphasis added).
 

 ¶ 11. The chancellor recognized the obvious roadblock Carl faced. Rule 60(b)(1) affords relief from a judgment based on an adverse party's misconduct-such as overreaching, threats, and coercion-only if the complaining party seeks relief within six months from the judgment's entry. And here, Carl was well aware of Lisa's supposed misconduct when he entered the settlement agreement. Yet he waited more than two-and-a-half years after the divorce decree and property-settlement agreement were final to try to back out. Because Rule 60(b)(1) requires misconduct-based challenges be filed within six months, the chancellor correctly refused to set aside the property-settlement-agreement portion of the divorce judgment.
 

 B. Rule 60(b)(6)
 

 ¶ 12. Carl next argues that, in addition to Rule 60(b)(1)'s "misconduct" route, Rule 60(b)(6) gave the chancellor another avenue to set aside the settlement agreement.
 

 ¶ 13. Carl is correct that Rule 60(b)(6) empowers chancellors to set aside judgments based on "any other reason justifying relief from the judgment."
 
 [5]
 

 M.R.C.P. 60(b)(6). And unlike Rule 60(b)(1), this particular provision contains no specified time period within which a party must file a motion for relief from judgment.
 

 Id.
 

 Rather, Rule 60(b)(6) says that such motions "shall be made within a reasonable time."
 

 Id.
 

 What qualifies as "[a] reasonable time is determined on a case-by-case basis, turning on the facts in each individual case."
 
 Cucos, Inc. v. McDaniel
 
 ,
 
 938 So.2d 238
 
 , 245 (Miss. 2006) (citing
 
 M.A.S. v. Miss. Dep't of Human Servs.
 
 ,
 
 842 So.2d 527
 
 , 530 (Miss. 2003) ). The two factors within the chancellor's discretionary call are "whether the party opposing the motion has suffered prejudice from the delay and whether the movant can show cause for failure to act sooner."
 

 Id.
 

 at 246 (citing
 
 M.A.S.
 
 ,
 
 842 So.2d at
 
 530 );
 
 see also
 

 Briney v. U.S. Fid. & Guar. Co.
 
 ,
 
 714 So.2d 962
 
 , 967 (Miss. 1998).
 

 ¶ 14. The chancellor carefully considered both factors when assessing the evidence from the five-day hearing. As the chancellor saw it, there was "no evidence of good cause in [Carl's] delay to challenge the Agreement." And to grant relief from the previously entered judgment "at this late date would cause actual prejudice to [Lisa]." The chancellor pointed out that Carl "made no assertion that he was unaware of the alleged misconduct." And he "admit[ted] that he was fully aware of the entirety of the circumstances on the date that he signed the Agreement." From these facts, the chancellor found Carl had not "acted within a reasonable time to file his motion under Rule 60(b)."
 

 ¶ 15. Whether Carl's Rule 60(b)(6) motion was filed within a reasonable time was a discretionary call for the chancellor to make-not this Court. And Carl's failure to show cause for not challenging the judgment sooner is itself enough for the chancellor to deny the Rule 60(b)(6) request. This is particularly true where Carl certainly knew of the complained-of circumstances when he signed the agreement. Considering the lack of cause, coupled with the chancellor's finding there would be actual prejudice to Lisa, we cannot say the chancellor wrongly dismissed Carl's motion. To overrule these findings would require we impermissibly place ourselves in the chancellor's shoes and reweigh the evidence. We refuse to do so.
 

 II. Unconscionability
 

 ¶ 16. The chancellor alternatively found that, even if Carl's filing was deemed timely under Rule 60, it still lacked merit. After review, we agree. While we find no abuse in the chancellor refusing to set aside the agreement under Rule 60(b), we also see no error in the chancellor's finding Carl was not overly browbeaten or otherwise coerced into signing a procedurally or substantively unconscionable agreement.
 

 A. Procedural Unconscionability
 

 ¶ 17. "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or an opportunity to study the contract and inquire about the contract terms.' "
 
 East Ford, Inc. v. Taylor
 
 ,
 
 826 So.2d 709
 
 , 714 (Miss. 2002) (quoting
 
 Pridgen v. Green Tree Fin. Servicing Corp.
 
 ,
 
 88 F.Supp.2d 655
 
 , 657 (S.D. Miss. 2000) ). But here, the chancellor found none of these problems.
 

 ¶ 18. To the contrary, after sifting the testimony and evidence, the chancellor found Carl "was able to make the payments, he understood the terms of the contract[,] and he voluntarily entered into the Agreement." Our review of the record shows strong support for these discretionary findings.
 

 ¶ 19. The agreement was incredibly clear. It emphasized that its terms strongly favored Lisa, and it mentioned why. The written explanation of Carl's enhanced obligations was not inconspicuous or hidden in fine print or a footnote-it was front and center in the agreement.
 

 ¶ 20. Furthermore, Carl's new procedure-based challenge is also completely at odds with his prior written acknowledgment that his and Lisa's negotiations were even-handed and not the product of duress, coercion, or overreaching. The agreement says so:
 

 ACKNOWLEDGMENT OF FAIRNESS IN EXECUTION OF DOCUMENT
 
 : Husband and Wife agree that this Settlement Agreement is not entered into as a result of any fraud, duress, misrepresentation, overreaching, coercion, or undue influence. In executing this document, both Husband and Wife acknowledge and agree that they are free from any of these matters, and are executing this agreement as their own voluntary and free act, and that they do so knowingly and willingly ....
 

 And his claim that Lisa kept him from obtaining counsel not only conflicts with her testimony but is also undercut by the agreement:
 

 ATTORNEYS
 
 : ... Husband agrees that he has been encouraged to and has had adequate opportunity and has been free to seek his own legal representation or other advice concerning this matter, before he signed and obligated himself to this Settlement Agreement.
 

 ¶ 21. The chancellor essentially found Carl knew exactly what he was doing and exactly what he was obligating himself to do when he signed the settlement agreement. Indeed, according to the agreement, Carl accepted its strict terms based on "the unique difficulties in which [his] behavior has placed the family unit[.]" The chancellor recognized this and noted that "[Carl] was in a place of self-loathing and felt extreme guilt for his choices that had caused the destruction of his marriage and family." That his extramarital activities and devious behavior gave Lisa the upper hand in negotiating a favorable settlement did not negate that Carl "freely and willingly" agreed to the settlement's terms. Nor did Carl's "self-imposed guilt" and Lisa's "obvious hostility," in the chancellor's view, amount to an unconscionable disparity of bargaining power. Based on his advanced education, Carl was certainly aware of the finality of signed legal contracts and judgments. And the chancellor's findings and the agreement's express acknowledgments undermine Carl's newly minted procedural-unconscionability claim.
 

 B. Substantive Unconscionability
 

 ¶ 22. "Substantive unconscionability occurs when the terms of the agreement are so one-sided that no one in his right mind would agree to its terms."
 
 West v. West
 
 ,
 
 891 So.2d 203
 
 , 213 (Miss. 2004) (citing
 
 In re Johnson
 
 ,
 
 351 So.2d 1339
 
 , 1341 (Miss. 1977) ). Considering the agreement's terms, the chancellor found Carl "was able to make the payments ...." And he understood the heightened terms, which he voluntarily accepted. Though the settlement agreement was disadvantageous to Carl, the chancellor could not find that no person in his senses would accept it.
 
 See
 

 id.
 

 This finding is supported by the record.
 

 ¶ 23. In addition, Carl testified he is "very stable" financially. Indeed, his Rule 8.05
 
 [6]
 
 disclosure shows a monthly surplus of more than $5,000 after support obligations, expenses, and taxes are paid. It is also undisputed that Carl has abided by the agreement's terms, making all required payments for more than two-and-a-half years.
 

 ¶ 24. The chancellor did recognize support provisions are modifiable where an unanticipated substantial or material change in circumstances arises.
 
 See
 

 Wallace v. Bond
 
 ,
 
 745 So.2d 844
 
 , 848-49 (Miss. 1999) ;
 
 McDonald v. McDonald
 
 ,
 
 683 So.2d 929
 
 , 931 (Miss. 1996). But Carl did not suggest or prove his financial circumstances had materially changed. So the court found no showing of a material change in circumstances warranting a downward modification.
 

 ¶ 25. An agreement made between parties should ordinarily be enforced.
 
 Williams v. Williams
 
 ,
 
 37 So.3d 1171
 
 , 1174 (Miss. 2010). And courts should "take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts."
 

 Id.
 

 (quoting
 
 West
 
 ,
 
 891 So.2d at
 
 211 ). Absent a finding of unusual circumstances-like fraud, overreaching, or mistake-"parties are afforded wide latitude in entering property settlement agreements."
 
 Id.
 
 (citing
 
 Steiner v. Steiner
 
 ,
 
 788 So.2d 771
 
 , 776 (Miss. 2001) ).
 

 ¶ 26. Here, the chancellor "expressly determined that no fraud or overreaching existed in this matter." Thus, he deemed "all provisions of the agreements regarding fixed alimony or a division of property" nonmodifiable. We therefore find, even if Carl's motion was not snagged on the chancellor's Rule 60(b)(1) and Rule 60(b)(6) timeliness findings, the chancellor did not abuse his discretion in alternatively rejecting the merits of the unconscionability claims.
 

 III. Sealed Court Records
 

 ¶ 27. Given the allegations raised and evidence presented in this appeal, this Court has significant public health and safety concerns. We therefore remand the chancellor's order sealing the court file for the trial court to conduct the balancing test set out in
 
 Estate of Cole v. Ferrell
 
 ,
 
 163 So.3d 921
 
 (Miss. 2012), and determine whether the court file should remain under seal.
 

 Conclusion
 

 ¶ 28. The chancellor reviewed Carl's complaint under the appropriate legal standards of Rules 60(b)(1) and 60(b)(6) and supported his decision not to set aside the agreement with record evidence. We find no abuse of discretion in these calls. Nor do we find the chancellor erred in determining the agreement was not unconscionable. We thus affirm. We do however remand the chancellor's order sealing the court file, for the chancellor to conduct the
 
 Estate of Cole
 
 balancing test to determine whether the court file should remain under seal.
 

 ¶ 29.
 
 AFFIRMED AND REMANDED.
 

 WALLER, C.J., RANDOLPH, P.J., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.
 

 KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.
 

 Cause number 2015-CA-00208-SCT is consolidated with this case for record purposes only.
 

 The chancellor sealed this case. So, fictitious names are used for the parties.
 
 See
 
 M.R.A.P. 48A.
 

 Emails between Carl and others were admitted in evidence, in which Carl proposed to write off insurance for a patient he sought to have sex with, solicited multi-partner sexual encounters, traded an x-ray he had taken of a "cute 15 year old boy['s] ... nice [penis]," and discussed and requested a photo of a twelve-year-old boy, who another individual claimed "sucked like a pro" who "kinda wants to join in with us."
 

 This is Carl's second appeal in this matter. The first appeal was dismissed by this Court for lack of jurisdiction under Rule 54(b).
 
 See
 
 M.R.C.P. 54(b).
 

 This catch-all has been referred to as a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is
 
 uncertain
 
 that one or more of the preceding clauses afford relief."
 
 Bryant, Inc. v. Walters
 
 ,
 
 493 So.2d 933
 
 , 939 (Miss. 1986) (citations omitted);
 
 see also
 

 Accredited Sur. & Cas. Co., Inc. v. Bolles
 
 ,
 
 535 So.2d 56
 
 , 60 (Miss. 1988). "But 'Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies.' "
 
 M.A.S. v. Miss. Dep't of Human Servs.
 
 ,
 
 842 So.2d 527
 
 , 530 (Miss. 2003) (quoting
 
 City of Jackson v. Jackson Oaks Ltd. P'ship
 
 ,
 
 792 So.2d 983
 
 , 986 (Miss. 2001) ). So, Carl's failure to timely raise the misconduct-based grounds within six months under Rule 60(b)(1) cannot be recast as a Rule 60(b)(6) motion.
 

 See
 
 Uniform Rule of Chancery Court 8.05, requiring parties to submit financial statements and make disclosures for domestic matters involving "economic issues and/or property division."