# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00875-SCT

### CONSOLIDATED WITH

## NO. 2015-CA-00208-SCT

*CARL SMITH*

*v.*

*LISA DOE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/10/2016 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM ABRAM ORLANSKY |
| | SUSAN LATHAM STEFFEY |
| ATTORNEYS FOR APPELLEE: | LINDSEY C. MEADOR |
| | DANNA ALBERT O'BRIEN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED AND REMANDED - 01/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. The husband in this case divorced his wife and entered into a property-settlement agreement that strongly favored his wife and child. The chancellor approved and adopted the agreement and incorporated it as part of the final divorce judgment. After abiding by the judgment's terms for two years, the husband asked the court to set it aside or modify it. As grounds, he alleged duress and his wife's supposed coercive misconduct in their negotiating

of what he now deems an unconscionable settlement. The chancellor denied the husband's request, finding he simply had waited too long to challenge the judgment. We agree.

¶2. When a party to a previously entered settlement agreement incorporated into a divorce judgment seeks to set it aside based on an adverse party's alleged misconduct, Mississippi Rule of Civil Procedure 60(b)(1) mandates he or she do so within six months. And the husband's attempt to escape the agreement was filed more than two years too late. To the extent he sought relief from the already-entered judgment for some reason other than his wife's supposed misconduct, the chancellor found his request was not filed within a "reasonable time" under Rule 60(b)(6).

¶3. We find the chancellor properly applied the law. And his decisions about the tardiness of Carl Smith's motion and his alternative finding that the agreement was not unconscionable are substantially supported. Because the chancellor did not abuse his discretion, we affirm.[1]

### Background Facts and Procedural History

¶4. Carl Smith and Lisa Doe divorced in February 2010.[2] The divorce decree incorporated a property-settlement agreement that was very favorable to Lisa. Carl acknowledged the lopsided nature of the settlement agreement. He understood he was assuming more debt and higher alimony and child-support payments than ordinarily required.

---

[1] Cause number 2015-CA-00208-SCT is consolidated with this case for record purposes only.

[2] The chancellor sealed this case. So, fictitious names are used for the parties. *See* M.R.A.P. 48A.

The signed agreement memorializes this understanding and why Carl was amenable to it.

One of the very first provisions in the settlement agreement says:

> **WHEREAS**, Husband recognizes and acknowledges that the provisions . . . and obligations undertaken by him regarding [child support], as well as the division of marital property and debt and the obligation undertaken by him to pay alimony, are . . . more burdensome upon him for alimony and child support and division of marital property and debt than a court would ordinarily impose. Nevertheless, Husband is both willing to limit and restrict his rights . . . and expand his obligations regarding child support, alimony, and division of marital property and debt as contained in this agreement . . . These limitations and restrictions of rights and expansion of obligations are based, in part, by both Husband and Wife's mutual understanding of the unique difficulties in which Husband's behavior has placed the family unit . . . .

The "unique difficulties" on the family stemmed from Carl's salacious interactions and extramarital affairs with known and anonymous same-sex partners, lying about how he had contracted HIV, and allegations of his pedophilic activities.[3] Because of his tremendous guilt and shame for the devastation he caused his family, Carl was amenable to the heightened obligations. He abided by the February 17, 2010 judgment, making all payments for more than two and a half years. But in October 2012, he tried to back out of it.

¶5.     Carl filed a complaint to set aside, or alternatively modify, the settlement agreement. He did not claim a material change in circumstances or lack of financial ability to abide by the agreement. Rather, for the first time, he urged the agreement was the product of coercion and duress and was procedurally and substantively unconscionable. He suggested his wife

---

[3] Emails between Carl and others were admitted in evidence, in which Carl proposed to write off insurance for a patient he sought to have sex with, solicited multi-partner sexual encounters, traded an x-ray he had taken of a "cute 15 year old boy['s] . . . nice [penis]," and discussed and requested a photo of a twelve-year-old boy, who another individual claimed "sucked like a pro" who "kinda wants to join in with us."

had strongarmed him, threatening to disclose his affairs, disease, and alleged malfeasance if he did not sign the agreement. And he signed the agreement under duress, facing "financial ruin, humiliation, loss of his medical license, criminal prosecution, and loss of contact" with his daughter. Carl also claims Lisa would not permit him to have an attorney review the agreement's terms.

¶6. Lisa disagreed with much of Carl's version. She admits she was angry and behaved harshly toward Carl after she had unearthed much of his hidden second life and illicit activities. But she maintained his coercion and duress allegations are not only false but are undermined by his express acknowledgments in the property-settlement agreement.

¶7. The chancellor granted Carl a hearing on his motion. And after five days of testimony and argument, he held Carl's attempt to set aside the settlement agreement was untimely under both Rule 60(b)(1) and 60(b)(6). He also found that, even if Carl's request had been prompt, the agreement was not unconscionable. Carl has now appealed to this Court.[4] On appeal, he argues the chancellor erred by (1) not finding his complaint timely and (2) not finding the settlement agreement substantively and procedurally unconscionable.

**Discussion**

¶8. We review the grant or denial of a Rule 60(b) motion for abuse of discretion. ***Finch v. Finch***, 137 So. 3d 227, 232 (Miss. 2014) (citing ***Stringfellow v. Stringfellow***, 451 So. 2d 219, 221 (Miss. 1984)). When reviewing a decision for abuse of discretion, "we ask first if the court below applied the correct legal standard." ***Burkett v. Burkett***, 537 So. 2d 443, 446

---

[4] This is Carl's second appeal in this matter. The first appeal was dismissed by this Court for lack of jurisdiction under Rule 54(b). *See* M.R.C.P. 54(b).

4

(Miss. 1989) (citing ***Detroit Marine Eng'g v. McRee***, 510 So. 2d 462, 467 (Miss.1987); ***Croenne v. Irby***, 492 So. 2d 1291, 1293 (Miss.1986)). "If so, we then consider whether the decision was one of those several reasonable ones which could have been made." ***Id***.

## I.     Timeliness

¶9.     Carl argues he signed the settlement agreement only because Lisa threatened to reveal his affairs and inappropriate behavior and activities. He insists Lisa's coercive misconduct and the agreement's favoring of Lisa warrant setting it aside.

### A.     Rule 60(b)(1)

¶10.     "Rule 60(b)(1) deals with relief from judgment obtained by fraud, misrepresentation, or *other misconduct of the adverse party*." ***Stringfellow***, 451 So. 2d at 221 (emphasis added). To obtain Rule 60(b)(1) relief from a final judgment, motion "shall be made . . . *not more than six months after the judgment*, order, or proceeding was entered or taken." M.R.C.P. 60(b)(1) (emphasis added).

¶11.     The chancellor recognized the obvious roadblock Carl faced. Rule 60(b)(1) affords relief from a judgment based on an adverse party's misconduct—such as overreaching, threats, and coercion—only if the complaining party seeks relief within six months from the judgment's entry. And here, Carl was well aware of Lisa's supposed misconduct when he entered the settlement agreement. Yet he waited more than two-and-a-half years after the divorce decree and property-settlement agreement were final to try to back out. Because Rule 60(b)(1) requires misconduct-based challenges be filed within six months, the chancellor correctly refused to set aside the property-settlement-agreement portion of the

5

divorce judgment.

> B.     *Rule 60(b)(6)*

¶12.    Carl next argues that, in addition to Rule 60(b)(1)'s "misconduct" route, Rule 60(b)(6) gave the chancellor another avenue to set aside the settlement agreement.

¶13.    Carl is correct that Rule 60(b)(6) empowers chancellors to set aside judgments based on "any other reason justifying relief from the judgment."[5] M.R.C.P. 60(b)(6). And unlike Rule 60(b)(1), this particular provision contains no specified time period within which a party must file a motion for relief from judgment. *Id*. Rather, Rule 60(b)(6) says that such motions "shall be made within a reasonable time." *Id*. What qualifies as "[a] reasonable time is determined on a case-by-case basis, turning on the facts in each individual case." ***Cucos, Inc. v. McDaniel***, 938 So. 2d 238, 245 (Miss. 2006) (citing ***M.A.S. v. Miss. Dep't of Human Servs.***, 842 So. 2d 527, 530 (Miss. 2003)). The two factors within the chancellor's discretionary call are "whether the party opposing the motion has suffered prejudice from the delay and whether the movant can show cause for failure to act sooner." ***Id***. at 246 (citing ***M.A.S.***, 842 So. 2d at 530); *see also* ***Briney v. U.S. Fid. & Guar. Co.***, 714 So. 2d 962, 967

---

[5] This catch-all has been referred to as a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is *uncertain* that one or more of the preceding clauses afford relief." ***Bryant, Inc. v. Walters***, 493 So. 2d 933, 939 (Miss. 1986) (citations omitted); *see also* ***Accredited Sur. & Cas. Co., Inc. v. Bolles***, 535 So. 2d 56, 60 (Miss. 1988). "But 'Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies.'" ***M.A.S. v. Miss. Dep't of Human Servs.***, 842 So. 2d 527, 530 (Miss. 2003) (quoting ***City of Jackson v. Jackson Oaks Ltd. P'ship***, 792 So. 2d 983, 986 (Miss. 2001)). So, Carl's failure to timely raise the misconduct-based grounds within six months under Rule 60(b)(1) cannot be recast as a Rule 60(b)(6) motion.

(Miss. 1998).

¶14. The chancellor carefully considered both factors when assessing the evidence from the five-day hearing. As the chancellor saw it, there was "no evidence of good cause in [Carl's] delay to challenge the Agreement." And to grant relief from the previously entered judgment "at this late date would cause actual prejudice to [Lisa]." The chancellor pointed out that Carl "made no assertion that he was unaware of the alleged misconduct." And he "admit[ted] that he was fully aware of the entirety of the circumstances on the date that he signed the Agreement." From these facts, the chancellor found Carl had not "acted within a reasonable time to file his motion under Rule 60(b)."

¶15. Whether Carl's Rule 60(b)(6) motion was filed within a reasonable time was a discretionary call for the chancellor to make—not this Court. And Carl's failure to show cause for not challenging the judgment sooner is itself enough for the chancellor to deny the Rule 60(b)(6) request. This is particularly true where Carl certainly knew of the complained-of circumstances when he signed the agreement. Considering the lack of cause, coupled with the chancellor's finding there would be actual prejudice to Lisa, we cannot say the chancellor wrongly dismissed Carl's motion. To overrule these findings would require we impermissibly place ourselves in the chancellor's shoes and reweigh the evidence. We refuse to do so.

## II. Unconscionability

¶16. The chancellor alternatively found that, even if Carl's filing was deemed timely under Rule 60, it still lacked merit. After review, we agree. While we find no abuse in the

7

chancellor refusing to set aside the agreement under Rule 60(b), we also see no error in the chancellor's finding Carl was not overly browbeaten or otherwise coerced into signing a procedurally or substantively unconscionable agreement.

### A.    Procedural Unconscionability

¶17.    "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or an opportunity to study the contract and inquire about the contract terms.'" *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002) (quoting *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000)).  But here, the chancellor found none of these problems.

¶18.    To the contrary, after sifting the testimony and evidence, the chancellor found Carl "was able to make the payments, he understood the terms of the contract[,] and he voluntarily entered into the Agreement."  Our review of the record shows strong support for these discretionary findings.

¶19.    The agreement was incredibly clear.   It emphasized that its terms strongly favored Lisa, and it mentioned why.  The written explanation of Carl's enhanced obligations was not inconspicuous or hidden in fine print or a footnote—it was front and center in the agreement.

¶20.    Furthermore, Carl's new procedure-based challenge is also completely at odds with his prior written acknowledgment that his and Lisa's negotiations were even-handed and not the product of duress, coercion, or overreaching.  The agreement says so:

> ACKNOWLEDGMENT OF FAIRNESS IN EXECUTION OF DOCUMENT:
> Husband and Wife agree that this Settlement Agreement is not entered into as

a result of any fraud, duress, misrepresentation, overreaching, coercion, or undue influence. In executing this document, both Husband and Wife acknowledge and agree that they are free from any of these matters, and are executing this agreement as their own voluntary and free act, and that they do so knowingly and willingly . . . .

And his claim that Lisa kept him from obtaining counsel not only conflicts with her testimony but is also undercut by the agreement:

ATTORNEYS: . . . Husband agrees that he has been encouraged to and has had adequate opportunity and has been free to seek his own legal representation or other advice concerning this matter, before he signed and obligated himself to this Settlement Agreement.

¶21. The chancellor essentially found Carl knew exactly what he was doing and exactly what he was obligating himself to do when he signed the settlement agreement. Indeed, according to the agreement, Carl accepted its strict terms based on "the unique difficulties in which [his] behavior has placed the family unit[.]" The chancellor recognized this and noted that "[Carl] was in a place of self-loathing and felt extreme guilt for his choices that had caused the destruction of his marriage and family." That his extramarital activities and devious behavior gave Lisa the upper hand in negotiating a favorable settlement did not negate that Carl "freely and willingly" agreed to the settlement's terms. Nor did Carl's "self-imposed guilt" and Lisa's "obvious hostility," in the chancellor's view, amount to an unconscionable disparity of bargaining power. Based on his advanced education, Carl was certainly aware of the finality of signed legal contracts and judgments. And the chancellor's findings and the agreement's express acknowledgments undermine Carl's newly minted procedural-unconscionability claim.

        **B.**    *Substantive Unconscionability*

¶22. "Substantive unconscionability occurs when the terms of the agreement are so one-sided that no one in his right mind would agree to its terms." *West v. West*, 891 So. 2d 203, 213 (Miss. 2004) (citing *In re Johnson*, 351 So. 2d 1339, 1341 (Miss. 1977)). Considering the agreement's terms, the chancellor found Carl "was able to make the payments . . . ." And he understood the heightened terms, which he voluntarily accepted. Though the settlement agreement was disadvantageous to Carl, the chancellor could not find that no person in his senses would accept it. *See id*. This finding is supported by the record.

¶23. In addition, Carl testified he is "very stable" financially. Indeed, his Rule 8.05[6] disclosure shows a monthly surplus of more than $5,000 after support obligations, expenses, and taxes are paid. It is also undisputed that Carl has abided by the agreement's terms, making all required payments for more than two-and-a-half years.

¶24. The chancellor did recognize support provisions are modifiable where an unanticipated substantial or material change in circumstances arises. *See Wallace v. Bond*, 745 So. 2d 844, 848-49 (Miss. 1999); *McDonald v. McDonald*, 683 So. 2d 929, 931 (Miss. 1996). But Carl did not suggest or prove his financial circumstances had materially changed. So the court found no showing of a material change in circumstances warranting a downward modification.

¶25. An agreement made between parties should ordinarily be enforced. *Williams v. Williams*, 37 So. 3d 1171, 1174 (Miss. 2010). And courts should "take a dim view of efforts

---

[6] *See* Uniform Rule of Chancery Court 8.05, requiring parties to submit financial statements and make disclosures for domestic matters involving "economic issues and/or property division."

to modify it, as we ordinarily do when persons seek relief from their improvident contracts." *Id.* (quoting *West*, 891 So. 2d at 211). Absent a finding of unusual circumstances—like fraud, overreaching, or mistake—"parties are afforded wide latitude in entering property settlement agreements." *Id.* (citing *Steiner v. Steiner*, 788 So. 2d 771, 776 (Miss. 2001)).

¶26. Here, the chancellor "expressly determined that no fraud or overreaching existed in this matter." Thus, he deemed "all provisions of the agreements regarding fixed alimony or a division of property" nonmodifiable. We therefore find, even if Carl's motion was not snagged on the chancellor's Rule 60(b)(1) and Rule 60(b)(6) timeliness findings, the chancellor did not abuse his discretion in alternatively rejecting the merits of the unconscionability claims.

### III. Sealed Court Records

¶27. Given the allegations raised and evidence presented in this appeal, this Court has significant public health and safety concerns. We therefore remand the chancellor's order sealing the court file for the trial court to conduct the balancing test set out in *Estate of Cole v. Ferrell*, 163 So. 3d 921 (Miss. 2012), and determine whether the court file should remain under seal.

### Conclusion

¶28. The chancellor reviewed Carl's complaint under the appropriate legal standards of Rules 60(b)(1) and 60(b)(6) and supported his decision not to set aside the agreement with record evidence. We find no abuse of discretion in these calls. Nor do we find the chancellor erred in determining the agreement was not unconscionable. We thus affirm. We

11

do however remand the chancellor's order sealing the court file, for the chancellor to conduct the *Estate of Cole* balancing test to determine whether the court file should remain under seal.

¶29.    **AFFIRMED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, JUSTICE, DISSENTING:**

¶30.    This Court has defined unconscionability to mean "an absence of meaningful choice on the part of one of the parties, together with contract terms [that] are unreasonably favorable to the other party." *Caplin Enters., Inc. v. Arrington*, 145 So. 3d 608, 614 (Miss. 2014). Today's majority holds that a property-settlement agreement with terms almost solely favoring the wife and child was not unconscionable. With this, I cannot agree. Because the property-settlement agreement in this case was so drastically in Lisa Doe's and the child's favor, I believe that it was both substantively and procedurally unconscionable. Therefore, I respectfully dissent.

### A.    Timeliness

¶31.    Carl Smith's complaint alleged that the agreement had been unconscionable, both procedurally and substantively, and that the settlement agreement should not be enforced in equity. In whole, the allegations in Carl's complaint encompassed the misconduct of Lisa as well as the unconscionable terms of the settlement agreement and overall equity of the agreement. Substantive unconscionability is not based on the misconduct of a party and

therefore does not fall under Rule 60(b)(1). Accordingly, at least that part of Carl's complaint fell under Rule 60(b)(6)'s catchall provision: "any other reason justifying relief from the judgment." Although Rule 60(b) states that there is a six-month time limit for other misconduct of an adverse party, the vast majority of the cases that fall under subsection (1) are for fraud and misrepresentation. Thus, in my opinion, procedural unconscionability also is encompassed by Rule 60(b)(6), any other reason justifying relief from the judgment, and therefore is under a "reasonable time" standard.

¶32. The trial court stated that, even if the court had found that Carl's motion was founded on Rule 60(b)(6), Carl had failed to file his complaint within a reasonable time. I disagree. "A reasonable time is determined on a case-by-case basis, turning on the facts in each individual case. *Cucos, Inc. v. McDaniel*, 938 So. 2d 238, 245 (Miss. 2006). For Rule 60(b) motions:

> What constitutes reasonable time must of necessity depend upon the facts in each individual case. The Courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party has some good reason for his failure to take appropriate action sooner.

*M.A.S. v. Miss. Dep't of Human Servs.*, 842 So. 2d 527, 530-31 (Miss. 2003) (citations omitted).

¶33. Here, Lisa would not be prejudiced by Carl's failure to seek relief sooner. Despite Lisa also being a physician, Carl has been required to pay for almost everything in their child's life, including $7,000 in child support per month. Carl solely has been required to pay for child support, the child's private school, medical insurance, 529 and MPACT plan, and

13

for a life-insurance policy with the child as beneficiary. Additionally, Lisa has been receiving an extraordinary amount in alimony payments per month. Carl also is paying for Lisa's school loans, in addition to his own.

¶34. Additionally, the circumstances of this case by definition are extraordinary and compelling. Carl clearly has demonstrated good cause for not filing his motion sooner. At the time of his divorce, Carl had HIV, was homosexual without the knowledge of his family, had not disclosed his HIV-positive status to the state licensing board, had engaged in homosexual extramarital affairs, and was in a precarious situation of possibly losing his means to support himself and also losing complete contact with his child. Given the totality of the circumstances in this case, Carl's hesitation to contest the property-settlement agreement was reasonable and was for good cause. Thus, I cannot agree with the majority's conclusion that the chancellor had not erred in finding that Carl's filing was untimely. I also cannot agree that Carl's motion lacked merit.

### B. Substantive Unconscionability

¶35. "Substantive unconscionability is proven by oppressive contract terms such that 'there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach . . . .'" *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699–700 (Miss. 2009). The Court looks at the four corners of the agreement to discover any terms that cause gross disparity between the contracting parties. *Id.*

¶36. The terms in the property-settlement agreement in this case clearly are substantively

unconscionable. Despite his more-than-adequate salary, Carl had not been represented by an

attorney, while Lisa had been represented by two attorneys. The provisions included:

- Lisa has full and exclusive legal and physical custody of their child.

- Lisa has no obligation to confer with Carl in any decision-making concerning the child, including health, education, and welfare.

- Lisa has complete discretion of visitation and may completely curtail visitation for as long as Lisa desires.

- Although Lisa has complete and sole discretion and custody of the child, Carl is required to pay Lisa $7,000 in cash child support per month until the child receives her baccalaureate degree or is emancipated or reaches age twenty-one, whichever occurs later.

- Carl is required to maintain a reasonable hospitalization insurance policy and is responsible for any deductibles, co-pays, uncovered medical, dental, optical, orthodontic, or counseling expense reasonably necessary for the minor child until the child completes her post-graduate or professional college education.

- Carl is required to pay for the child's automobile of Lisa's *sole* choosing, including purchase price, tag, insurance, and maintenance and upkeep until the child completes her post-graduate or professional college education.

- Carl is required to pay for all costs of the child's first wedding.

- Carl is required to pay all costs and expenses of the child's college education, including any post-graduate and/or professional degrees at a college or university to be selected by Carl, Lisa, and the child, by majority rule.

- College expenses that Carl will be responsible for include, but are not limited to, registration fees, tuition, room and board, books, lab fees, transportation, and sorority dues.

- Carl has been required to pay $100 a month beginning on October 1, 2010, into an irrevocable "529 plan" to secure the child's college funds.

- Carl must fund the child's Mississippi MPACT plan, prepaid tuition, whereby within five years from the first payment all tuition for a Mississippi Institution of Higher Learning, undergraduate education, shall be prepaid.

- Carl must pay for all costs of any private school the child attends until the child graduates from high school.

- Carl is required to maintain a life insurance policy in the minimum amount of $500,000, with the child as irrevocable beneficiary and Lisa as trustee until the child completes her post-graduate or professional college education.

- Carl must designate Lisa as irrevocable secondary beneficiary of the life insurance policy, which status becomes primary and effective either upon the minor child's completion of her post-graduate or professional college education or predeceasing Lisa, whichever may occur first.

- Carl must list Lisa as primary beneficiary *of any and all* pensions held by him, with the child as secondary beneficiary.

- Carl is liable for all debt in his name, including:
  - his student loans in the amount of $269,000
  - Lisa's student loans in the amount of $249,000
  - the second-mortgage line of credit in the amount of $50,000
  - CitiBank credit card in the amount of $5,276
  - Key Bank loan in Carl's name in the amount of $12,643
  - ACS loan in the amount of $1,116
  - CSL loan in Lisa's name in the amount of $11,583
  - Methodist loan in Lisa's name in the amount of $3,000

- Carl is required to maintain monthly payments at their current amounts but may increase payments if he chooses. He must maintain the current payoff schedules for all liabilities or pay them off sooner.

- Carl was required to vacate the marital home within two days of the execution of the agreement.

- Lisa had the option to transfer title and possession of the marital home to Carl within eighteen months of the agreement.

- Lisa had the option to have Carl transfer all right, title, and interest in

16

the marital home to Lisa, but Carl would remain responsible for the second mortgage loan.

- Carl must pay lump-sum or fixed alimony for thirty-five years in the amount of $9,000 per month, with a thirty-five percent override calculated on Carl's salary and all other earned or investment income. All alimony is a claim against Carl's estate.

- Alimony payments do not cease upon remarriage of Lisa or upon death of Lisa, but will be an asset of her estate.

- Lisa maintained all household goods, furnishings, appliances, and other items of personalty in and around the marital house except for a short list of items.

- If Lisa predeceases Carl before the child reaches the age of majority, Lisa's parents will have legal and physical custody of the child. If Lisa's parents and Lisa predecease Carl, Lisa's brother will have full custody.

¶37. Thus, the property-settlement agreement requires Carl to pay Lisa's medical-school student loans, as well as his own. The contract provisions wholly deprive Carl of seeing his daughter but require him to almost completely financially support his daughter. Carl eventually must pay for their child's vehicle of Lisa's choosing with no limitation on price, pay for the child's undergraduate and postgraduate education, and pay for the child's first wedding, with no limitation on price. Although Lisa also is a physician, Carl is paying on average approximately seventy-five percent of his earnings to support Lisa and the child. The agreement even had a provision to change the child's last name from Carl's surname to Lisa's.

¶38. Unconscionability looks at the circumstances existing at the time the contract was made as well as at the terms of the contract. *Sanderson v. Sanderson*, 170 So. 3d 430, 437

17

(Miss. 2014). This Court looks within the agreement to determine if the terms caused a gross disparity between the contracting parties. *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699 (Miss. 2009). For substantive unconscionability, "[a] much-quoted judicial definition is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Smith v. Express Check Advance of Mississippi, LLC*, 153 So. 3d 601, 607 (Miss. 2014) (citations omitted). The circumstances surrounding the property-settlement agreement left Lisa with complete power and Carl with none. At that time, Carl's sexual preferences were not publicly known, nor was his HIV diagnosis. The Medical Board had not been made aware of his diagnosis, which could have greatly affected his medical career. Lisa additionally had access to email accounts that contained sensitive information. He was faced with losing complete contact with his only child. Thus, the settlement agreement is not merely "disadvantageous" to Carl, but instead shows gross disparity on its face. Carl had no choice but to sign the agreement at that time.

¶39. Although the majority states that Carl is "very stable" financially, it mischaracterizes the facts. The property-settlement agreement requires him to pay seventy-five percent of his salary to Lisa and to his daughter, whom he has not been allowed to see after signing the agreement. That Carl is able to live on the amount left over after his extravagant obligations is not the standard this Court should apply when determining unconscionability. "The law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract . . . ." *Covenant Health*, 14 So. 3d at 699. Fundamental

fairness was absent from the circumstances surrounding this contract.[7] Hence, I believe that the property-settlement agreement is substantively unconscionable.

### C.     Procedural Unconscionability

¶40.    Further, procedural unconscionability may be proven by showing "a lack of knowledge, lack of voluntariness, . . . disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006).

¶41.    The trial court concluded that, because of his guilt, Carl freely and willingly had entered into the agreement. Even though Carl admitted feeling guilty for his actions, I cannot find that mere guilt coerced Carl into signing an agreement that gave complete custody and decision-making authority over Carl's minor child to Lisa, along with extraordinary and oppressive financial obligations.

¶42.    Lisa had access to Carl's email accounts and forwarded Carl emails that were private as well as potentially detrimental to his future medical career. Carl alleged that Lisa had threatened to reveal his homosexuality and had threatened not only criminal prosecution, but medical licensure revocation or suspension, disclosure of his HIV diagnosis, embarrassment, and humiliation. Carl testified that Lisa had threatened exposure if he  hired an attorney to

---

[7]Carl's position is further supported by the majority's use of the word "salacious" to describe his extramarital affairs. The word salacious connotes indecency, obscenity, or lewdness. *See* http://www.thesaurus.com/browse/salacious?s=t (last visited January 23, 2018). I dare say that the majority would not have chosen that particular term had Carl chosen to engage in heterosexual affairs. A search of the term "salacious" in opinions reveals the term's use in criminal cases involving pedophilia. *See Shaffer v. State*, 72 So. 3d 1090, 1098 (Miss. Ct. App. 2010); *Wade v. State*, 583 So. 2d 965, 968 (Miss. 1991).

represent him in the divorce or told any family members or friends about what was occurring. Yet Lisa had two attorneys and drafted the agreement to provide Carl only with the minimal amount he would need to live on per month. He had not been able to see or read the contract until the minutes immediately before he signed it. In addition, Carl stated that Lisa had threatened exposure if he rented an apartment or hotel room before the divorce was finalized. Consequently, Carl had lived in his car for several months. Carl had no bargaining power, had a lack of opportunity to study the contract, and had no input in drafting the agreement. Accordingly, I would find that the contract, too, was procedurally unconscionable. Based on the facts of this case and with so much at stake for Carl, two years was not an unreasonable time to wait to contest its unconscionable terms. The majority makes much of the clearness of the agreement's terms. With respect, I believe that the majority downplays the totality of Carl's position. Lisa did not have the upper hand; she had the only hand.

### D.    Confidentiality

¶43.    In addition, I take issue with the majority's decision to remand the chancellor's order sealing the court file for the trial court to conduct a balancing test to determine whether the court file should remain under seal. The majority states as its reason for remanding to the trial court that certain facts in this case have caused the Court to have significant public health and safety concerns. If this Court has public health and safety concerns, I believe the appropriate method to allay those concerns would be to report to the relevant governmental authority.

¶44.    In this case, the relevant governmental authority would be the State Medical Board. As Professor Arthur R. Miller stated:

20

> [T]here are ways of dealing with the problem that are less destructive to the competing values than eviscerating the availability of protective orders. . . . [A] court has the power to disclose information revealed during litigation, especially to relevant governmental authorities, even after the parties have negotiated an agreement to maintain confidentiality. . . . Because the courts have the authority to protect public health and safety when necessary – and because judges seem to understand how to use their discretion to do just that – public health concerns do not justify curtailing the power to issue protective orders.

Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 478-79 (1991). Those relevant institutions must pursue the matter as they see fit. *Id.*

¶45.    For example, in ***Anderson v. Cryovac, Inc.***, 805 F.2d 1, 8 (1st Cir. 1986), the First Circuit Court of Appeals disclosed information to the relevant public-health authorities, finding that:

> The court's exception for disclosures to public health and environmental authorities had a compelling justification. In a case involving allegations that a city's water supply had been poisoned by toxic chemicals, the public interest required that information bearing on this problem *be made available to those charged with protecting the public's health.*

> This limited exception for disclosures to health officials would not by itself have defeated the protective order's intended goal of preventing a saturation of potential jurors with news reports of the allegations being made against the defendants. As long as dissemination of the information was not released to the general public, the court had good cause to continue the protection.

*Anderson*, 805 F. 2d at 8 (emphasis added). The trial court in this case agreed with the parties that the record should be sealed. Should this Court have concerns relating to public health and safety, I believe that the appropriate avenue is to report those concerns to the State Medical Board. Because unsealing the record would do little to remedy any public health and

safety concerns, I fail to see the public benefit gained by unsealing the record.

## CONCLUSION

¶46.     Therefore, I dissent and would reverse the decision of the chancery court and remand this case to reopen the parties' divorce. Additionally, I disagree with the majority's decision to remand the chancellor's order sealing the court file.

**KITCHENS, P.J., JOINS THIS OPINION.**